Defendant and third-party plaintiff-appellant Packaging and Handling Supplies Co. ("PHS") appeals from a summary judgment rendered in favor of third-party defendant-appellee Dun 
Bradstreet, Inc. ("D B") upon the third-party complaint of PHS against D B. Issues among other parties in this case remain unresolved, but the trial court has certified that there is no just reason for delay with respect to the entry of final judgment in connection with the third-party claim against D B, in accordance with Civ. R. 54(B).
PHS argues that the trial court erred in rendering summary judgment in favor of D B because there are genuine issues of material fact precluding the entry of judgment in D B's favor as a matter of law. We conclude that actual or constructive malice is an essential element of the defamation claim against D B, since D B had a contractual obligation to provide credit information to its customers, so that its communication of credit information was subject to the qualified privilege. Because we conclude that PHS has not presented any evidence from which the trial court could infer actual or constructive malice on the part of D B, we conclude that there was no genuine issue of material fact, and that D B was entitled to judgment as a matter of law. Therefore, the trial court's summary judgment in D B's favor will be affirmed.
 I
PHS had an account with Ohio Poly Corporation. There was a dispute as to the amount owing on the account. In April 1985, PHS mailed a check to Ohio Poly Corporation in the amount of $46,234.59. On the back of this check, the following legend appeared:
"Endorsement of this check constitutes full payment of all monies due to Ohio Poly per attachment to check listing invoices and credit."
Third-party defendant National City Bank of Cleveland credited the amount of the check to the account of Ohio Poly Corporation, as evidenced *Page 89 
by a stamp on the back of the check dated May 2, 1985. There does not appear to be any dispute that Ohio Poly Corporation received the amount of the check. However, there is no endorsement on the check, at least in any conventional sense.
PHS contends that Ohio Poly Corporation's acceptance of the amount of the check constituted an acceptance of an offer by PHS to settle and compromise its outstanding indebtedness to Ohio Poly Corporation, in view of the legend on the back of the check. D B argues that the offer of settlement and compromise, by its terms, specified the manner of its acceptance (by endorsement), and there was no endorsement; therefore, according to D B, the indebtedness owed by PHS to Ohio Poly Corporation was not settled and compromised by the latter's acceptance of the check.
On or shortly after June 7, 1985, D B, which is in the business of publishing credit reports, published a "DEBT ALERT" reflecting that PHS had two accounts outstanding, with an "average claim amount" in the category of "less than 6 mos." in the amount of $12,458.93, and a percent recovered on those claims of zero. The "DEBT ALERT" also showed one of the claims as having been settled in full, and the other claim as being currently in the collection process. Finally, the "DEBT ALERT" included a recitation that it was initiated by "new claim in collection process." There seems to be agreement that the claim recited in the "DEBT ALERT" as being currently in the collection process corresponds to Ohio Poly Corporation's claim against PHS.
On June 7, 1985, D B was retained by Ohio Poly Corporation to collect the indebtedness of PHS, and D B on that date began a series of correspondence directed toward that end.
In the affidavit of James G. Nazarenus, the President and Chairman of the Board of PHS, offered in opposition to D B's motion for summary judgment, Nazarenus averred that when he was notified by D B of the alleged claim of Ohio Poly Corporation, he "completely and fully explained the false and fraudulent nature of the claim and presented proof of payment by way of Exhibit A [the check payable to Ohio Poly Corporation in the amount of $46,234.59, dated April 23, 1985]." In his affidavit, Nazarenus further averred as follows:
"Dun Bradstreet purposely and with actual malice publicly distributed a writing encaptioned `DEBT ALERT' which maliciously and falsely claimed that `Packaging' [PHS] was in default in its payments and creditors were initiating collection procedures."
Ohio Poly Corporation brought this action against PHS to recover the amount that it claimed was still owing on account. PHS filed a third-party complaint against D B, alleging defamation. The basis of this third-party complaint was that D 
B "maliciously and falsely claimed that * * * [PHS] was in default in its payments and creditors were initiating collection procedures." PHS also alleged in the third-party complaint that D B "knew that it [the DEBT ALERT] was false, or failed to take proper steps to ascertain its accuracy and instead published it with reckless disregard of whether it was true or not."
D B filed a motion for summary judgment. Each party filed an affidavit in support of its position.
The trial court granted D B's motion for summary judgment, holding that since the check was never actually endorsed, the settlement offer of PHS was never actually accepted by Ohio Poly Corporation, so that the credit report put out by D B was correct. In other words, the trial court found, as a *Page 90 
matter of law, that the allegedly defamatory statement was true and rendered summary judgment in D B's favor. From that judgment, PHS appeals.
 II
PHS has assigned two errors as follows:
"I. Mistake of Law.
"A. The decision was in error when it concluded that plaintiff's failure to endorse appellant's check was dispositive of Dun Bradstreet's motion for summary judgment.
"II. Mistake of Fact.
"A. The decision was in error when it stated that Ohio Poly `deposited' appellant's check with the National [City] Bank of Cleveland.
"B. The decision was in error when it stated `that plaintiff did not endorse the check.'"
Although PHS has chosen to divide its assignments of error into a claimed legal error and claimed factual errors, it is essentially arguing that the trial court improvidently granted D B's motion for summary judgment. The proper test is whether, from the evidence submitted by the parties in accordance with Civ. R. 56, it appears that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Civ. R. 56(C).
PHS claims that D B's credit outstanding indebtedness to Ohio Poly Corporation, because, PHS argues, that indebtedness had been fully settled and compromised. The trial court held that the indebtedness had not been settled and compromised because the offer of settlement recited the method of acceptance of the offer and that was required to be by endorsement of the check. The trial court found that there was no endorsement of the check.
A nice question arises as to whether Ohio Poly Corporation can be said to have constructively endorsed the check by having accepted the proceeds, even though no one with authority to do so ever actually executed an endorsement on behalf of Ohio Poly Corporation. We find it unnecessary to resolve that issue.
We agree with D B that where a person has a duty to make a communication to another person, and he makes that communication in good faith, the communication is subject to the qualified privilege. Hahn v. Kotten (1975), 43 Ohio St.2d 237, 244, 72 O.O. 2d 134, 138, 331 N.E.2d 713, 718. Where a communication is made under circumstances giving rise to the qualified privilege, a showing of malice is required. It is not enough to show that the statement was carelessly made. The plaintiff must show either that the defamatory statement was malicious or that it was made in reckless disregard of the truth.
In the case before us, Lisa Farnsworth, an employee of D B, averred in an affidavit submitted in support of D B's motion for summary judgment, that the "DEBT ALERT" was published in accordance with D B's contractual obligation to provide credit reports to its subscribers; this assertion does not appear to be disputed. Farnsworth further averred that neither D B nor any of its employees responsible for the publication in question bore any ill will or malice toward PHS; and that the "DEBT ALERT" was published in good faith, in the belief that it was accurate, and without any knowledge that the statements therein contained were not true.
James Nazarenus, the President and Chairman of the Board of PHS, in an affidavit offered in opposition to *Page 91 
D B's motion for summary judgment, averred, among other things, as follows:
"5. When notified by Dun Bradstreet of the alleged claim, I completely and fully explained the false and fraudulent nature of the claim and presented proof of payment by way of Exhibit A [the check paid to Ohio Poly Corporation].
"6. Dun Bradstreet purposely and with actual malice publicly distributed a writing encaptioned `DEBT ALERT' which maliciously and falsely claimed that `Packaging' [PHS] was in default in its payments and creditors were initiating collection procedures."
Nowhere in the record is there any evidence of any communication to D B from PHS before the June 7, 1985 letter initiating D B's efforts to collect Ohio Poly Corporation's claim against PHS. Although Nazarenus avers that following this letter he presented proof that the debt had been paid, in the form of the alleged settlement check, his affidavit does not negate the averment in D B's affidavit that it had no knowledge of any claim that this debt had been settled and compromised at the time that it published the credit report reflecting the claim.
The averment in Nazarenus' affidavit to the effect that D B published the credit report with actual malice is purely conclusory and fails to show affirmatively that the affiant is competent to testify concerning the malicious nature of the publication on personal knowledge, as required by Civ. R. 56(E).
Civ. R. 56(E) includes the following provision:
"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."
In our view, Nazarenus' conclusory averment that the publication in question was malicious, unaccompanied by any indication of his basis for making that averment, failed to set forth specific facts showing that there was a genuine issue as to whether DB was malicious or in reckless disregard of the truth, in connection with its publication of the credit report in question. Accordingly, summary judgment was properly entered in favor of D B. PHS's assignments of error are overruled.
 III
All of PHS's assignments of error having been overruled, the summary judgment rendered in favor of D B will be affirmed.
Judgment affirmed.
KERNS, P.J., and WILSON, J., concur.